## Richmond.

THE ALEXANDRIA AND FREDERICKSBURG RAILWAY COMPANY
v. THE ALEXANDRIA AND WASHINGTON RAILROAD
COMPANY AND ALS.

Absent, *Moncure*, P.

1. The general statute relating to corporations (Code 1873, ch. 56) confers no jurisdiction on a county court to take or appropriate land or other property of individuals or corporations for a railroad company. Its only jurisdiction in such a case is to appoint commissioners to ascertain and report what compensation and damages the owner of the property is entitled to receive, where he and the company cannot agree upon the question, and to determine what shall be a just compensation; upon the payment of which, the statute vests the fee simple title of the property in the company.

2. The right to appropriate private property to public use, is the right of eminent domain, and lies dormant in the State until legislative action points out the occasions, the modes, the conditions and the agencies for its appropriation; and a legislative act declaring the necessity for such appropriation being the customary mode of determining that fact, must be held for this purpose; the law of the land and no further finding or adjudication is essential unless it be required expressly by the constitution of the State.

3. The power of exercising this right of eminent domain is delegated to the company by the act of incorporation, and it thereby becomes the agency of the State, under certain restrictions, to take such lands as it may deem necessary for its railroad.

4. The act of the Legislature of June 4, 1870, having authorized the Alexandria and Fredericksburg Railway Company to extend its road from Alexandria to a point on the Potomac opposite Washington, it only remained to determine what land or other property should be taken for that purpose, and to ascertain and fix the compensation and damages therefor. The power to take the land was expressly vested in the railroad company by the act of incorporation upon payment of compensation and damages, and no action of any court was necessary to give effect to this legislative provision.

5. The said act, after authorizing the company to construct its road, contains the following restriction : " Provided that in the extension of the said railway it shall in no way interfere with the chartered rights or franchises of any railroad extending between Alexandria and Washington ; but this proviso shall not be construed as preventing said Alexandria and Fredericksburg railway from crossing any such railroad." The company took, and the county court of Alexandria county condemned for its use, a strip of 18½ feet, making 8 acres 25 perches of the road bed of the Alexandria and Washington Railroad Company, extending the whole length of its road, which had been appropriated in fee simple to the latter company by virtue of its charter. HELD :

1. This taking of land was an interference with the chartered rights and franchises of the Alexandria and Washington Railroad Company within the prohibition of said proviso.

2. The county court had no jurisdiction over the subject matter, and its judgment being null and void, is no impediment to the consideration of the case.

6. Grants of corporate powers being in derogation of the common law, are to be strictly construed, and this is especially the case where the power claimed is a delegation of the right of eminent domain, one of the highest powers of sovereignty pertaining to the State itself and interfering most seriously and often vexatiously with the ordinary rights of property.

7. Land or other property, which has, in conformity to the provisions of the constitution, been devoted to the public use, may afterwards, in like manner, be again taken and appropriated to the public service, under a subsequent statute, if such purpose is expressly or by unavoidable implication, authorized by its provisions.

On the 8th of November, 1876, the Alexandria and Fredericksburg Railroad Company filed its petition in the circuit court of Alexandria county, praying to be admitted a party to a certain chancery suit therein depending between the Alexandria and Washington Railroad Company, plaintiff, and Fowle, Snowden & Co. and others, defendants ; the object of which suit was to enjoin the sale of property under a deed of trust executed by the latter company for the benefit of Fowle, Snowden & Co., and to ascertain the liens on said property with their priorities, etc.

The petition set forth that by regular proceedings in the

county court of said county (which proceedings were ex-
hibited in the petition) a portion of land containing 8 acres
25 perches of the Alexandria and Washington Railroad
Company, or, as shown by the report of the commissioners
in said proceedings, 18½ feet along its whole line had
been condemned for the uses and purposes of the Alexan-
dria and Fredericksburg Railway Company; that many of
the incumbrances on the road of the Alexandria and Wash-
ington Railroad Company were prior in date to the said
proceedings and judgment of condemnation; that the
money ascertained by the commissioners to be a proper
compensation for the land so taken, had been paid over by
order of the court to the parties entitled thereto; that by
said proceedings of condemnation a fee simple title to the
land so condemned had been vested in the Alexandria and
Fredericksburg Railway Company, discharged of all in-
cumbrances whatsoever; and it was prayed that the rights
of the petitioner as the fee simple owner of the land might
be recognized and the sale made subject thereto.

After various proceedings, not necessary to be stated, the
circuit court, on the 23d of May, 1879, dismissed the said
petition, and from this decree the Alexandria and Fred-
ericksburg Railway Company applied to one of the judges
of this court for an appeal, which was allowed. The case
is sufficiently stated in the opinion of *Anderson,* J.

*F. L. Smith,* for appellant.

*H. O. Clayton, F. Miller* and *E. Hunton,* for appellee.

ANDERSON, J. The Alexandria and Washington Railroad
Company was chartered in February, 1854, for the pur-
pose of constructing and operating a railroad between the
cities of Alexandria and Washington. It had under
its charter acquired title in fee to such lands as were

suitable and necessary for the purposes for which it was incorporated, in the mode prescribed by statute, and had laid out its road and constructed its road-bed on the lands it had so acquired, and had laid its track, and was running its trains thereon, when the Alexandria and Fredericksburg Railway Company, having been authorized by act of Assembly, approved June 4, 1870, to extend its line of road from the city of Alexandria to a point on the Potomac, opposite the city of Washington, caused the track of their road to be laid upon the road-bed aforesaid of the Alexandria and Washington Railroad Company, appropriating the west 18½ feet of the same to its use. This strip of land constituting a part of the Alexandria and Washington company's road-bed, was taken from said company by the Alexandria and Fredericksburg Railway Company, and condemned for its use by the judgment of the county court of Alexandria county.

It is contended by appellants that said judgment is final and conclusive, and that it cannot be impeached or attacked collaterally. That is so, if it was pronounced by a court which had jurisdiction of the subject matter upon which it was rendered, and there was no fraud, none being imputed. And it is relied upon by the appellant in this case (which is a suit by creditors of the Alexandria and Washington Railroad Company to subject to sale the property of said company to satisfy their debts), who comes in by petition to except from sale that portion of the property of the said Alexandria and Washington company which had been condemned and appropriated to petitioner by the judgment aforesaid of the county court.

I think it will be found on a careful inspection of the statute in relation to corporations generally (Code of 1873, ch. 56, p. 535), that no jurisdiction is given to the county courts to take or appropriate lands or other property of individuals or corporations for a railroad company. Such

appropriation can be made only by the exercise of the right of eminent domain; which is a sovereign right, and resides in the State. The county court not having common law jurisdiction in such cases, if it be not given by statute, it does not exist.

The jurisdiction given to the county courts of roads and landings, &c., by chapter 52 of the Code, §§ 21 to 33 inclusive, is very different. In such cases jurisdiction to determine whether the road will be of a public benefit, and whether it shall be established or not; and if established, power to condemn private property for its use, are given to the county courts. But such powers and jurisdiction are not delegated to, or vested in the county courts, by chapter 56, in relation to railroads. Those powers are exercised by the legislature itself, in the act of incorporation, and of authority to the company to construct the railroad. And the right is delegated to the company—in fact, it is constituted an agency of the State, under certain restrictions, to take such lands as it may deem necessary for the railroad, the title in fee simple to be vested in the company upon payment of the compensation.

The right to appropriate private property to public uses (Judge Cooley says) lies dormant in the State, until legislative action is had, pointing out the occasions, the modes, conditions, and agencies for its appropriation. Private property can only be taken pursuant to law; but a legislative act declaring the necessity, being the customary mode in which that fact is determined, must be held for this purpose, the law of the land, and no further finding or adjudication can be essential unless the constitution of the State has expressly required it. (Cooley on Const. Lim., top p. 657; marg. 528, 4 Edi.)

The act of the general assembly of June 4, 1870, authorizing the Alexandria and Fredericksburg Railway Company to extend their road from Alexandria to a point on the

Potomac opposite Washington, determined the necessity of such appropriation, and authorized it, and no further finding or adjudication was necessary to determine the fact of such necessity for the public benefit. Indeed, a court would be precluded by the legislative action.

It only remained to determine what lands or other property should be taken for that purpose, and to ascertain and fix the compensation and damages to which the owner was entitled therefor. The power to take the land is expressly vested in the railroad company, and it is declared to be invested with the title thereto in fee simple, upon the payment of the compensation and damages, and is authorized to take possession of the land so taken and appropriated by it, and no action of any court is necessary to give effect to this legislative provision. This right of eminent domain is delegated by the legislature to the railroad company exclusively, under certain restrictions and limitations, which I shall hereafter notice. The only jurisdiction given to the county court is to appoint commissioners to ascertain and report what compensation and damage the owner of the property is entitled to receive, when he and the railroad company cannot agree upon it, and to determine what shall be a just compensation; upon the payment of which the statute vests the title in the company. The court has no jurisdiction to determine whether property taken by the company is necessary and proper for the public use, or to make any inquiry into the matter, and it has no jurisdiction to consider any question as to the company's title to the same, and of course not to adjudge the title in the company. If it had jurisdiction to adjudge the title in the company, it could adjudge the title not to be in the company, although the statute expressly and unqualifiedly vests the title in the company on payment of the compensation and damages. Its jurisdiction over the whole subject matter is limited to the matter

of compensation and damages to be awarded to the owner of the property. It is, consequently, not invested with the authority of eminent domain. No such extraordinary power is delegated to it, in such cases, by the legislature. It is not constituted the agent of the State in which that sovereign power resides, for the exercise of it in railroad cases. But the power is delegated to the railroad corporation to be exercised, not for private, but for public uses. And, as we have seen, the legislature, by authorizing the construction of the road, has determined that question; that it will be for a public use, which will be beneficial to the State. The same eminent author above cited, on p. 672, says, "not only the State and its political divisions, but also individuals and corporate bodies may be authorized to take private property for the construction of works of public utility, and when duly empowered by the legislature so to do, their private pecuniary interest do not preclude their being regarded as public agencies in respect to the public good, which is sought to be accomplished."

The Alexandria and Fredericksburg Railway Company are duly empowered by the general law to take the lands of private parties for the use of their said road; the legislature having decided that it will be for the public utility, authorizes the company to take such lands as are needed for the purpose. And the law invests the company with title thereto in fee simple, upon the payment of the compensation determined on, subject, however, to certain restrictions and limitations in both the general law and in the special act of the legislature, *supra*, under which alone it had any authority to construct said road. I need only consider, in this case, the restrictions contained in the special act aforesaid. After giving the authority to construct the road, the act contains a restriction and limitation of its powers in the following words: 

" Provided, That in the extension of the said railway, it

shall in no way interfere with the chartered rights or franchises of any railroad extending between Alexandria and Washington; but this proviso shall not be construed as preventing said Alexandria and Fredericksburg Railway from crossing any such railroad."

The said company took a strip of $18\frac{1}{2}$ feet of the road bed of the Alexandria and Washington Railroad Company, extending the whole length of the road, amounting to eight acres and twenty-five perches, which had been appropriated to it, and the title to which in fee was vested in it by the law under its charter, and which it held under its chartered rights and franchises.

It is contended by the counsel for the appellant in their able argument, that this was no interference with the rights and franchises of said company. That it was only the appropriation of land of said company, as of individuals, and not its franchises—and that *rights* in this clause and *franchises* mean the same thing. And, in support of their claim, they cite the language of President Tucker in *Tuckahoe Canal Company* v. *Tuckahoe Railroad Company,* 11 Leigh, 75, in which he held that a franchise was an incorporeal hereditament, consequently they say, it cannot be land. That is true. But, as was said by Judge Tucker, "It is a franchise to be a corporation with power to sue and be sued, and to hold property as a corporate body." The property taken by the Alexandria and Fredericksburg Railway Company was held by the Alexandria and Washington Railroad Company as a corporate body; and, according to Judge Tucker in the said opinion, is held as a corporate body by virtue of its franchise. And can it be said that it was no interference with the company's franchise to take the land which it held under it? I cannot think so. It seems to me that it was a very direct and serious interference with its franchise. The language of the restriction is very strong: "Shall in no way interfere"—and, that the

language might not be misunderstood, the restriction is expressed with greater fullness and force, "Shall in no way interfere with the chartered *rights* or franchises of any railroad," &c.   It is very clear, it seems to me, that to take the lands of the company upon which its railroad bed was constructed, for the length of the road, or a part of them, which it held under its chartered rights and franchises, was such an interference as is expressly prohibited by said clause of the act; and this, I think, more plainly appears from the latter part of the clause, which makes a saving in favor of the Alexandria and Fredericksburg Company, that the language shall not be construed to prevent that company from *crossing* such road.   It implies that without this qualification the legislature apprehended that the proviso might even prevent its *crossing* such road.

It must be remembered that there are powers exercised by a corporation to appropriate land for its corporate purposes.   And Judge Cooley says: "There is no rule more familiar or better settled than this, that grants of corporate powers being in derogation of common right, are to be strictly construed; and this is specially the case where the power claimed is a delegation of the right of eminent domain, one of the highest powers of sovereignty pertaining to the State itself, and interfering most seriously, and often vexatiously, with the ordinary rights of property." (660 p. top; 530 marg.)

If the foregoing views are correct, and I think they are, the county court of Alexandria has no delegated authority to exercise the right of eminent domain under the statute in such cases, and consequently had no jurisdiction to adjudicate the question whether the land should be taken from one company and given to another company, and upon this ground said judgment of the county court was *coram non judice,* and consequently null and void.   It vested no right in the Alexandria and Fredericksburg Company, and

can form no barrier or impediment to the consideration and decision of this case, just as if there had been no such judgment rendered. For the court having no jurisdiction of the subject matter, there is no judgment in the way, and the case turns upon the question whether the Alexandria and Fredericksburg Company had any authority of law to interfere with the chartered rights and franchises of the Alexandria and Washington Company by appropriating to itself its road-bed, either in whole or in part. We have seen that it had no such right, and upon this view of the case the decree of the circuit court, I think, was clearly right, and ought to be affirmed.

But if contrary to my understanding of the statute, it does delegate to the county courts in such cases authority to exercise the right of eminent domain, and invests them with jurisdiction in general to determine what lands shall be condemned for the railroad company, and what shall not be, and to invest the title in fee simple to such as they condemn—a power and jurisdiction which, I think, the statute may be searched in vain, to find *conferred* on the county courts, in railroad cases—it still remains a question, was the county court of Alexandria invested with jurisdiction in this case to take from the Alexandria and Washington Company its road-bed, in whole or in part, which it held in fee under its charter, devoted to the public use, and give it to the Alexandria and Fredericksburg Company for another public use ?

It is undoubtedly true (it was said in *Proprietors of Locks & Canals* v. *City of Lowell*, 7 Gray, 226) that land or other property which has in conformity with the provisions of the constitution been devoted to the public use, may afterwards in like manner be again taken and appropriated to the public service, under a subsequent statute duly enacted, if .such purpose is expressly, or by unavoidable implication, authorized by its provisions. * * * But if such an appro-

priation is once made, the property cannot afterwards be interfered with, or the right of holding and enjoying it in that definite manner be interrupted or disturbed, except under the provisions of some subsequent statute, expressly or by necessary implication, authorizing its subjection to public service in another and different manner.

In the *Housatonic Railroad Company* v. *Lee and Hudson Railroad Co.* 118 Mass. Rep. 391, the court held that a charter to build and maintain a railroad between certain points, without describing its course and direction, * * * does not, *prima facie*, give any power to lay out the road over land already devoted to and within the recorded location of another railroad. It is not to be presumed that the legislature intended to allow land thus devoted to one public use to be subjected to another, unless the authority is given in express words or by necessary implication (citing *Springfield* v. *Connecticut River Railroad*, 4 Cush. 72). " A general authority to lay out a railroad does not authorize a location over land already devoted to another public use." (Mills on Eminent Domain, § 46). Numerous other cases are cited by appellee's counsel in support of this doctrine, which I need only refer to. 2 Gray, 35–37; 23 Ohio St. (*Hikok et al.* v. *Hine*); 68 New York, 171; 23 Min. 169; 23 Cal. 325; 36 Cal. 639; 8 N. H. 398; 10 Pick. 270; 53 N. York, 574.

The appropriation of private property for the use of a railroad by a railroad company, is by authority of the act of the legislature which authorized the construction of the road, which Cooley says, *supra*, must be held for this purpose the law of the land. And the county court, it seems to me, could have no jurisdiction, in the face of such legislative action, to divert it from such use, and appropriate it to another, unless authorized by a subsequent act of the legislature, in express terms, or by necessary implication; and to this result the authorities before cited lead. The

power, being extraordinary and against common right, must be construed strictly.

The omission of the legislature to embody these restrictions in the statute, in the revision of 1849, as recommended by the revisors, I do not think can be construed as a legislative construction of the law in conflict with what seems to be the whole current of judicial decision. But I deem it unnecessary to pursue this inquiry further.

The special act of the legislature which authorized the Fredericksburg and Alexandria Company to construct this road, exempted, as I have endeavored to show, the property of the Alexandria and Washington Company which the Fredericksburg and Alexandria Company, in laying out its road, appropriated to itself, from condemnation by that company, it being an interference with the chartered rights and franchises of the other company. And by virtue of that exemption it could not be taken by the Alexandria and Fredericksburg Company, and it was not within the jurisdiction of any court to condemn it, because by that exemption it was not subject to the right of eminent domain. Upon this aspect of the case I will content myself with a reference to the able opinion of the judge of the circuit court. Whilst I have confidence in the correctness of the ground first taken in this opinion, I am inclined to the opinion that upon this view, also, the county court exceeded its jurisdiction in its judgment of condemnation, and that consequently its said judgment may be attacked collaterally.

Upon the whole I am of opinion to affirm the decree of the circuit court.

STAPLES and BURKS, J's, concurred in the result, and CHRISTIAN, J., dissented.

DECREE AFFIRMED.