**UNITED STATES v. CERTAIN PARCELS OF LAND IN FAIRFAX COUNTY, VIRGINIA et al. (DAVIS, Intervenor et al.).**

Misc. No. 555.

United States District Court
E. D. Virginia, Alexandria Division.

March 30, 1950.

568

George R. Humrickhouse, United States Atty., and A. Carter Whitehead, Special Asst. to the United States Atty., Richmond, Va., and D. Murnan Smith, Department of Justice, Washington, D. C., for the Government.

J. Randall Caton, Jr., Alexandria, Va., for the Belle Haven Realty Corporation.

Andrew W. Clarke, Alexandria, Va., Joseph W. Wyatt and Frederick A. Ballard, Washington, D. C., J. Barton Phillips, Alexandria, Va., for intervenors.

Harry E. Cunningham, Alexandria, Va., appearing pro se.

BARKSDALE, District Judge.

Some years ago, probably beginning as early as 1925, Belle Haven Realty Corporation began the development of a residential subdivision in Fairfax County near the City of Alexandria. In the development, streets and lots were laid off, and a complete and adequate sewer system was installed. From time to time, lots were sold to individuals who built residences. The cost of the installation of the sewer system was prorated, and a proportionate part of such cost was included in the price paid by the purchasers of the lots. In their conveyances of lots to purchasers, Belle Haven Realty Corporation did not specifically mention the sewer system, but did include in the conveyances a grant of "all appurtenances to the same and in any wise belonging". As houses were built, they were connected to the sewer system, and no charge for the use of the system was made against the property owners.

In this proceeding, instituted on December 13, 1944, the United States of America, on behalf of the Federal Works Agency, has condemned and taken the entire Belle Haven sewer system, and has connected it, at least in part, to a trunk line sewer which replaces at least one of the original out-falls. This taking was without objection, and without claim for compensation on the part of Belle Haven Realty Corporation. Apparently, it was the thought of both the Belle Haven Realty Corporation and the Government that the individual property owners had no rights or interests in the sewer system. Subsequent to the taking of the sewer system, it has been leased to, and operated by, the Board of Supervisors of Fairfax County, Virginia, acting for and in behalf of Sanitary District No. 1, Fairfax County, Virginia. Beginning January 1, 1950, the Board of Supervisors of Fairfax County began sending

monthly bills to the Belle Haven householders in the amount of $2.00 each as a sewer service charge, which amount, according to the allegations of certain Belle Haven householders, covers not only the cost of maintenance and operation of the Belle Haven sewer system, but also includes an amount for the amortization of the costs of installation of the trunk line sewer to which the Government has connected the Belle Haven system.

In the Fall of 1948, certain of the Belle Haven property owners filed petitions to intervene herein, alleging that the Belle Haven property owners owned the Belle Haven sewer system, or at least had rights therein which had been taken by the Government without payment of compensation therefor. In their answers which they sought to file, petitioning property owners waived all claims to monetary compensation on condition that, in lieu of monetary compensation, the court include in the judgment of taking a stipulation or limitation that no present or future Belle Haven property owner be assessed by the Government, or any successors in interest, as a user charge, tax, or in any other manner, any amount in excess of the actual costs of maintenance and operation of the sewer system within the said subdivision, and specifically, that such property owners never be in any manner assessed or charged with any amount for amortization of the trunk line sewer to which the Belle Haven system has been connected. As to these petitions, the Government took the position that the property owners had no rights or interests in the sewer system, and objected to intervention by the petitioning property holders. After a hearing, I reached the conclusion, as set out in a memorandum filed herein on November 4, 1948, 89 F. Supp. 571, that the property owners did have "property rights by way of easements appurtenant in and to the Belle Haven sewer system", and therefore had the right to intervene and assert their rights to just compensation by reason of the taking of such rights by petitioner. I did not at that time pass on the question of whether or not the court might grant intervenors' petition for a limitation on the charges which might be assessed against them in lieu of monetary compensation. No further action was taken herein until February 11, 1950, when certain intervenors filed their motion for a temporary injunction asking the court to enjoin petitioner and its agents and lessees from collecting, or asserting the right to collect, any charges for the use of the Belle Haven sewer system until the court had determined the question of just compensation raised by their answers. A hearing was held on intervenors' motion for a preliminary injunction at Alexandria on March 22, 1950, during the course of which hearing, petitioner, by counsel, filed its motion to strike out of intervenors' answer their claim for a limitation of user charge as just compensation in lieu of monetary damages. Time was allowed intervenors within which to file a memorandum in opposition to the Government's motion, and such memorandum has now been filed and considered. Intervenors' motion for a preliminary injunction was taken under advisement pending a decision on the Government's motion.

*Discussion of the Question Involved.*

In this proceeding, without objection, the Government has already taken the entire Belle Haven sewer system. The Government now vigorously opposes the imposition of any limitation upon its use of the sewer system, or the imposition of any limitation upon it or its lessee of the charges which may be made for the use of the sewer system. Inasmuch as it is obvious from what has taken place that the Government took this sewer system for the purpose of maintaining it and integrating it with more comprehensive sewer facilities, it does not seem to me inappropriate, from a common sense viewpoint, that the Belle Haven property owners be compensated for the taking of their easements of user by the grant of a continued right of user, the charge for such user being limited to the costs of maintenance of the Belle Haven sewer system. However, here, the Government has taken the entire sewer system in fee, opposes any diminution of its taking, and asserts that nothing less than the fee would be sufficient for its purposes. Under these circumstances, I have reached the conclu-

570

sion that the court has no power to reduce, by limitation or otherwise, the estate and title taken by the Government.

As was said in Shoemaker **v.** United States, 147 U.S. 282, 298, 13 S.Ct. 361, 390, 37 L.Ed. 170: "The adjudicated cases likewise establish the proposition that, while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted; that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made."

■ See also United States v. Gettysburg Electric Co., 160 U.S. 668, 685, 16 S.Ct. 427, 40 L.Ed. 576. In other words, it seems to me to be the law that it is beyond the judicial function to determine that a fee simple, subject to an easement, is sufficient for the Government's purposes, when the Government, in carrying out legislative purposes, asserts that nothing less than the fee simple would be adequate. See Roanoke City v. Burkowitz, 80 Va. 616, 623: "The view thus expressed is fully supported by the adjudged cases, which hold that the question as to the degree or quantity of interest to be taken is, like other political questions, exclusively for the legislature; and that when the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. De Varaigne v. Fox [Fed.Cas.No.3,836], 2 Blatchf. 95; People v. Smith, 21 N.Y. 595; Boom Company v. Patterson, 98 U.S. 403 [25 L.Ed. 206]; United States v. Jones, 109 U.S. 513 [3 S.Ct. 346, 27 L.Ed. 1015]; Beekman v. S[aratoga &] R. Co., 3 Paige 45, 22 Am.Dec. 679, and cases cited in the note, p. 692."

■ It is well settled that just compensation means the equivalent in money of the property taken. See United States v. Miller, 317 U.S. 369, at page 373, 63 S.Ct. 276, at page 279, 87 L.Ed. 336, 147 A.L.R. 55, wherein it is said: "The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken."

It is true that there are instances to be found in the reported cases, where property owners have been compensated in media other than money. Jefferson County v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564. See also Kansas City v. Napiecek, 76 Kan. 693, 92 P. 827, Morss v. Boston & Maine Railroad, 2 Cush. 536, 56 Mass. 536, 2 Lewis on Eminent Domain (3rd ed.), paragraph 756 (paragraph 505 of 2nd edition), p. 1343. However, it appears that in all these instances which I have been able to find, where compensation other than money was awarded, it was by consent of the parties.

In the paragraph in Lewis on Eminent Domain cited above, it is said: "The commissioners or other tribunal to assess damages have no authority to give compensation in anything but money. It is erroneous, therefore, for them in their award to reserve to the owner certain easements or privileges in the property condemned, such as the right to construct a way over it or drains through it, or the right to leave buildings or parts of buildings standing thereon and use them as before. So it is erroneous for the tribunal to award that the party condemning shall do certain things for the benefit of the owner, and to reduce the damages accordingly."

At the very end of the paragraph, it is pointed out that, although an owner is not bound to accept licenses and privileges to go upon and use the property taken, parties, by consent, may ratify such provisions in such a way as to make binding contracts between them, capable of being enforced in the usual way. But it is also pointed out that where the statute vests a fee in the party condemning, and the award reserves an easement to the owner, such an award would be void as repugnant to the legal effect of the condemnation.

■ It is therefore my conclusion that this court has no power, in awarding just

compensation to the intervening Belle Haven property holders, to reduce the fee simple taken by the Government by imposing easements thereon or limitations on the use of the property taken by the Government.

An order will therefore be entered granting the Government's motion to strike, and allowing intervenors thirty days within which to amend their answers, should they be so advised. Intervenors' motion for a preliminary injunction will be denied.