## UNITED STATES v. CERTAIN PARCELS OF LAND IN FAIRFAX COUNTY et al.

### No. 555.

United States District Court

E. D. Virginia, Alexandria Division.

Dec. 3, 1951.

173

A. Devitt Vanech, Asst. Atty. Gen., George R. Humrickhouse, U. S. Atty., Richmond, Va., A. Carter Whitehead, Sp. Asst. to U. S. Atty., Richmond, Va., and Ralph J. Luttrell, D. Murnan Smith and W. Braxton Miller, Attys., Dept. of Justice, Washington, D. C., for the Government.

. J. Barton Phillips, Alexandria, Va., Joseph W. Wyatt, Washington, D. C., and Frederick A. Ballard, Washington, D. C., for intervenors.

. J. Randall Caton Jr., Alexandria, Va., for Belle Haven Realty Corp.

BARKSDALE, District Judge.

On December 13, 1944, the United States of America filed its petition for condemnation in this action. Upon this petition, an amended petition and declarations of taking, an order was entered herein on April 8, 1948, vesting title in petitioner, and awarding possession to petitioner, of all the real estate and easements comprizing the entire Belle Haven sewer system. At that time, only Belle Haven Realty Corporation was a party respondent. Pursuant to a previous understanding Belle Haven Realty Corporation interposed no objection to the Government's taking, and the Government deposited only nominal damages as estimated just compensation.

Beginning about 1925, Belle Haven Realty Corporation began the development of a residential subdivision in Fairfax County, Virginia, near the City of Alexandria. In the development, streets and lots were laid off and a complete and adequate sewer system was installed. From time to time, lots were sold to individuals, who built residences. The cost of the installation of the sewer system was prorated, and a proportionate part of such cost was included in the price paid by the purchasers of the lots. In their conveyances of lots to purchasers, Belle Haven Realty Corporation did not specifically mention the sewer system, but did include in the conveyances a grant of "all appurtenances to the same and in any wise belonging." As houses were built, they were connected to the sewer system and no charge for the use of the system was made against the property owners. After the entry of this country into World War II in December 1941, the demand for housing accommodations in the vicinity of Washington became very acute. Acting under the authority of the statute known as the Lanham Act, as amended, 54 Stat. 1125, 55 Stat. 361, 42 U.S.C.A. § 1521 et seq., Gov-

ernment agencies undertook to increase the facilities for housing defense workers in the City of Alexandria, Arlington and Fairfax Counties, amongst other nearby territories. Of course, sewerage was necessary for the defense housing, and the Government prepared a very comprehensive plan for the disposal of sewerage in Fairfax County. In the spring of 1943 a Government engineer requested the Belle Haven Realty Corporation for permission to use some of its sewer facilities. At that time, of course, the Belle Haven subdivision had a completely integrated sewer system with outfalls into the Potomac River. Belle Haven refused this request, whereupon, after negotiations, to quote from Belle Haven's answer, "there arose an agreement that this defendant (Belle Haven Realty Corporation) would accept nominal damages of a dollar provided that the entire system in Belle Haven be taken, including all laterals, and that in the final order it be provided that there be no maintenance, operation, construction, reconstruction, replacements, or easement charges, against any lot, lots, or parts of lots, within the recorded subdivision of Belle Haven, made and recorded prior to January 1, 1943; that there be no maintenance, operation, construction, reconstruction, replacements, or easement charges, against any lots to be created abutting those sewers now built and existing in easements, dedicated streets, or proposed streets, * * *"

It seems never to have occurred to either the Government or to Belle Haven Realty Corporation that the individual lot owners had any interest or ownership in the sewer system. Accordingly, this action was instituted naming only Belle Haven Realty Corporation as respondent. The Government proceeded to take the Belle Haven sewer system, to connect it with certain trunk sewers, and generally to integrate it with its comprehensive sewer system. Thereafter, the Government leased the sewer system to Fairfax County, Virginia, acting for and on behalf of Sanitary District No. 1 of Fairfax County. Some time prior to August 31, 1948, Fairfax County began sending monthly bills to Belle Haven householders in the amount of $2 each, as a sewer service charge, which amount, according to the Belle Haven householders, was sufficient to cover not only the costs of maintenance and operation of the Belle Haven sewer system, but also included an amount for the amortization of the costs of installation of the trunk line sewer to which the Government connected the Belle Haven system.

Certain lot owners, together with Belle Haven Citizens Association, Inc., felt themselves aggrieved and filed their motion to intervene herein and protect their rights. The Government opposed such intervention, but I, for reasons set out in an opinion therewith filed, reached the conclusion that the householders had acquired equitable interests in the sewer system, and entered an order allowing the individual lot owners to intervene and seek just compensation for their interests in real estate taken by the Government. This opinion is reported as United States v. Certain Parcels of Land in Fairfax County, Virginia (Davis, Intervenor), D.C., 89 F.Supp. 567.

In their answers, intervenors waived any claim to monetary reimbursement provided the court include in its judgment of taking a stipulation that neither they, nor other lot owners similarly situated, be required to pay any service charge greater than enough to defray the costs of maintenance and operation of their sewer system: that is, that they be protected from being required to pay any part of the amortization of the cost of the trunk line or other part of the sewer system. The Government's motion to strike out this prayer raised the question of whether or not this court could, over its protest, impose such a limitation on the Government's taking.

Inasmuch as the Belle Haven householders had a sewer system ample for their needs, which they had paid for as part of the purchase prices of their lots, the contention of the intervenors did not seem to me unreasonable. However, I came to the conclusion that, without its consent, under the law I was powerless to impose any such limitation or condition on the Government's taking. This opinion is reported as United States v. Certain Parcels of Land

in Fairfax County, Virginia (Davis, Intervenor), D.C., 89 F.Supp. 571.

The intervenors, being allowed to amend their answers, have filed answers as mentioned at the outset hereof, directly attacking the authority of the Government to acquire their sewer system by condemnation and praying that the Government be required to restore their sewer system to the condition in which it was before the Government's taking.

Intervenors rely heavily on Puerto Rico Light & Power Co. v. United States, 1 Cir., 131 F.2d 491. It is true that under the Lanham Act, the District Court in this case allowed the Government to condemn an entire electric power and tramway system and integrate it with the Government's water power project, and the Circuit Court reversed on the ground that the condemnation was not authorized by the Lanham Act. I have reached the conclusion that the Government's taking here was unauthorized, but I do not find it necessary to rely on the Puerto Rico case, supra.

■ Subsequent to the Puerto Rico case, and, it would seem, to some extent on account of it (Congressional Record, July 6, 1943, pp. 7286, 7287), the Lanham Act was amended. 57 Stat. 565, 42 U.S.C.A. § 1534 and note. At the time of the institution of this action, the Lanham Act contained the following proviso: "Provided *further,* That (a) none of the funds authorized herein shall be used to acquire public works already operated by public or private agencies, except where funds are allotted for substantial additions or improvements to such public works and with the consent of the owners thereof, * *."

When this proviso came to my attention in the consideration of the briefs which had been filed, I wrote to Government counsel (with copies to other counsel) as follows: "While I have come to no final conclusion, and will not before hearing from you, it appears to me that the Belle Haven sewer system was undoubtedly 'public works already operated by' a private agency. If that be true, even though it be conceded for the sake of argument, that funds were allotted for substantial additions or improvements, was the taking with 'the consent of the owners thereof?' I should think that the consent referred to would mean an unconditional consent, and intervenors contend that the consent of Belle Haven Realty Corporation was only a conditional consent. However, even if it be conceded that the necessary consent was obtained from Belle Haven Realty Corporation, was that sufficient? The Government's brief and amendatory paragraph refer to Belle Haven Realty Corporation as the *'purported owner'.* There is no such language as that in the statute. The statute says *'consent of the owners.'* Assuming the correctness of my previous holding that the property owners who had purchased from Belle Haven Corporation owned easements in and to the sewer system, were they not also owners *pro tanto* of the sewer system? If the property owners were in fact part owners of the sewer system, no consent having been obtained from them, how can the Government's taking be justified?"

Thereupon, Government counsel requested leave to file a supplemental brief, which leave was granted, and at the request of all parties, the whole matter was deferred for a number of months while interested parties sought an amicable solution of the matter. Failing to reach an amicable solution, supplemental briefs have been filed by both sides, and upon consideration thereof, I am still of the opinion rather plainly indicated by my letter to Government counsel.

On the question of whether or not the individual Belle Haven property owners acquired interests in the sewer system when they purchased their lots, the Government's supplemental brief cites certain Virginia decisions which seem to me to support the conclusion which I had previously reached herein, 89 F.Supp. 567. The cases cited in the Government's supplemental brief are City of Danville v. Forest Hills Development Corp., 165 Va. 425, 182 S.E. 548, City of Richmond v. Henrico County, 185 Va. 176, 37 S.E.2d 873, Payne v. Godwin, 147 Va. 1019, 133 S.E. 481, and Lindsay v. James, 188 Va. 646, 51 S.E.2d 326, 7 A.L.R. 2d 597.

■ Inasmuch as the proviso quoted above was a part of the Lanham Act at the time this action was instituted, the conclusion seems to me inescapable that the sewer system here sought to be acquired by the Government could only be acquired, "with the consent of the owners thereof". I do not believe that the qualified consent of the Belle Haven Realty Corporation was sufficient to comply with the statute; but even if I should be wrong as to this, the Government does not even contend that it secured the consent of the individual lot owners, and I do not feel any doubt that they were included amongst the "owners" of the property sought to be acquired.

It therefore follows that an order will be entered, setting aside the orders heretofore entered herein vesting title in, and awarding possession to the Government, and dismissing this action. I am of the opinion that this court has no power in this action to require the Government to restore the Belle Haven sewer system to its condition prior to the Government's taking. If the owners of the Belle Haven sewer system have suffered compensable damage by reason of the Government's taking, they must seek their relief in an appropriate action.