## UNITED STATES v. CERTAIN PARCELS OF LAND IN FAIRFAX COUNTY et al.

### No. 6399.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1952.

Decided May 10, 1952.

Edmund B. Clark, Atty., Department of Justice, Washington, D. C. (Wm. Amory Underhill, Asst. Atty. Gen., A. Carter Whitehead, U. S. Atty., Richmond, Va., and John F. Cotter, Atty., Department of Justice, Washington, D. C., on brief), for appellant.

Frederick A. Ballard, Washington, D. C. (J. Randall Caton, Alexandria, Va., and Joseph W. Wyatt, Washington, D. C., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a suit brought to condemn a sewer system which had been constructed by the Belle Haven Realty Corporation of Fairfax County, Virginia, and which served persons who had purchased building lots from that corporation. The suit was instituted in 1944 "to acquire an easement for the construction and operation of sewer pipes in land occupied by sewer pipes" of the corporation. By amendments to the petition and declaration of taking, filed in April 1948, the scope of the taking was enlarged to acquire easements in the lateral sewer lines and also title to all sewer mains previously constructed by the corporation in the area. At the time of the first declaration of taking, just compensation estimated at $2 was deposited, at the time of the second declaration of taking, the amount deposited as just compensation was $1. The condemnation proceedings purported to be instituted under authority of the Lanham Act of October 14, 1940, 54 Stat. 1125, as amended

June 28, 1941, 55 Stat. 361, and July 15, 1943, 57 Stat. 565, 42 U.S.C.A. § 1521 et seq.

In August 1948, owners of property served by the sewer system filed petitions asking that they be allowed to intervene in the proceeding alleging that they were owners of an interest in the sewer system sought to be condemned; that they had paid for the system by paying their share of the construction cost in the purchase of their lots; that they had acquired rights and easements with respect to the system which entitled them to use it free of charge; that the United States had connected the system with a system which it had constructed and had leased the consolidated system to Fairfax County; and that Fairfax County in defiance of their right to use the system free of charge had assessed against each of them a monthly charge of $2. They asked that they be allowed to intervene and assert their rights in the premises and an order was entered allowing intervention, the court holding that the Belle Haven property owners had acquired easements in the sewer system as it existed at the time of their purchases. See United States v. Certain Parcels of Land in Fairfax County, Va., D.C., 89 F.Supp. 571.

In the answer which they sought to file, the intervening property owners stated that they waived claims to monetary compensation for the taking of their easements in the sewer system on condition that, in lieu of monetary compensation, the court include in the judgment of taking a provision that they be not assessed anything in excess of the cost of maintenance of the sewer system taken and specifically that they be not charged with any amount for amortization of the trunk line system with which the system taken had been connected. Upon motion of the United States, this portion of the answer was stricken by the District Judge on the ground that, in awarding compensation to the property owners, the court was without power "to reduce the fee simple taken by the Government by imposing easements thereon or limitations on the use of the property taken". United States v. Certain Parcels of Land in Fair-

fax County, Va., D.C., 89 F.Supp. 567, 571.

Following the order striking this portion of the answer of the intervenors, the Belle Haven Realty Corporation, which had not answered up to that time, filed an answer in which it stated that the cost of the sewer system had been added to the purchase price of the Belle Haven Realty Development, that it was the owner of the sewer system subject to the equities of the property owners and was entitled to reproduction cost less depreciation as compensation for the taking. By way of further answer it stated that its agreement to accept nominal damages was conditioned upon its being provided in the final order that there be "no maintenance, operation, construction, reconstruction, replacement, or assessment charges" against any lot in the Belle Haven subdivision which had been sold prior to that time. The intervenors filed amended answers challenging the right of the government to maintain the suit under the Lanham Act. In the light of these answers and the facts developed at a number of pretrial hearings, the court entered an order dismissing the suit, on the ground that the consent of the owners of the sewer system had not been obtained as required by the provisions of the Lanham Act. See United States v. Certain Parcels of Land in Fairfax County, Va., D.C., 101 F.Supp. 172, 173. The facts were thus stated by the court below in the opinion then filed:

"Beginning about 1925, Belle Haven Realty Corporation began the development of a residential subdivision in Fairfax County, Virginia, near the City of Alexandria. In the development, streets and lots were laid off and a complete and adequate sewer system was installed. From time to time, lots were sold to individuals, who built residences. The cost of the installation of the sewer system was prorated and a proportionate part of such cost was included in the price paid by the purchasers of the lots. In their conveyances of lots to purchasers, Belle Haven Realty Corporation did not specific-

ally mention the sewer system, but did include in the conveyances a grant of 'all appurtenances to the same and in any wise belonging.' As houses were built, they were connnected to the sewer system and no charge for the use of the system was made against the property owners. After the entry of this country into World War II in December 1941, the demand for housing accommodations in the vicinity of Washington became very acute. Acting under the authority of the statute known as the Lanham Act, as amended, 54 Stat. 1125, 55 Stat. 361, 42 U.S.C.A. § 1521 et seq., Government agencies undertook to increase the facilities for housing defense workers in the City of Alexandria, Arlington and Fairfax Counties, amongst other nearby territories. Of course, sewerage was necessary for the defense housing, and the Government prepared a very comprehensive plan for the disposal of sewerage in Fairfax County. In the spring of 1943 a Government engineer requested the Belle Haven Realty Corporation for permission to use some of its sewer facilities. At that time, of course, the Belle Haven subdivision had a completely integrated sewer system with outfalls into the Potomac River. Belle Haven refused this request, whereupon, after negotiations, to quote from Belle Haven's answer, 'there arose an agreement that this defendant (Belle Haven Realty Corporation) would accept nominal damages of a dollar provided that the entire system in Belle Haven be taken, including all laterals, and that in the final order it be provided that there be no maintenance, operation, construction, reconstruction, replacements, or easement charges, against any lot, lots, or parts of lots, within the recorded subdivision of Belle Haven, made and recorded prior to January 1, 1943; that there be no maintenance, operation, construction, reconstruction, replacements, or easement charges, against any lots to be created abutting those sewers now built and existing in easements, dedicated streets, or proposed streets, * * *."

We think it clear that this suit for the condemnation of an existing sewer system cannot be maintained under the Lanham Act. The provision of the statute relied on, Act of Oct. 14, 1940, Title II, Lanham Act, sec. 202, as added June 28, 1941, 55 Stat. 362, 42 U.S.C.A. § 1532, is as follows:

"Whenever the President finds that in any area or locality an acute shortage of public works or equipment for public works necessary to the health, safety, or welfare of persons engaged in national-defense activities exists or impends which would impede national-defense activities, and that such public works or equipment cannot otherwise be provided when needed, or could not be provided without the imposition of an increased excessive tax burden or an unusual or excessive increase in the debt limit of the taxing or borrowing authority in which such shortage exists, the (Federal Works Administrator) is authorized, with the approval of the President in order to relieve such shortage—(a) To acquire, prior to the approval of title by the Attorney General if necessary * * * improved or unimproved lands or interests in lands by purchase, donation, exchange, lease * * * or condemnation (including proceedings under sections 257, 258, 361–368 and 258a–258e of Title 40, for such public works.)"

Other sections of the statute make provision for the construction of public works, utilization of existing works, grants in aid etc.; but none of the others grants any power to exercise the right of eminent domain.

A sewer system is a system of drainage pipes, not lands or interests in lands. Easements in land are essential to the maintenance of such a system; but the power to condemn easements in order that a system may be constructed does not carry with it the power to condemn an existing system. Puerto Rico Ry. Light & Power Co. v. United States, 1 Cir., 131 F.2d 491,

499. Counsel for the government assert the contrary, but they cite no authority to sustain their position, and we know of none. The rule is well settled that a general power of condemnation does not authorize the condemnation of property already legally appropriated to a public or quasi public use, in the absence of legislative authority expressly given or necessarily implied. 18 Am.Jur. 723–724; 29 C.J.S., Eminent Domain, § 75, p. 866; 10 R.C.L. 198–199; note 173 A.L.R. 1379; Alexandria & F.R. Co. v. Alexandria & W. R. Co., 75 Va. 780, 40 Am.Rep. 743; Vermont Hydro-Electric Corp. v. Dunn, 95 Vt. 144, 112 A. 223, 12 A.L.R. 1495; Old Colony R. Co. v. Framingham Water Co., 153 Mass. 561, 27 N.E. 662, 13 L.R.A. 332. A fortiori a general power to condemn lands may not be construed to authorize the condemnation of a public works system merely because easements in land are appurtenant thereto. This would seem to be elementary.

That it was not the intention of Congress to authorize the acquisition of existing public works systems under the Lanham Act was not only decided, and we think correctly so, in Puerto Rico Ry. Light & Power Co. v. United States, supra, but was also expressed subsequent to that decision by Congress itself in the act of 1943 increasing the appropriation for the acquisition of property under the Lanham Act. The act increasing the appropriation contained the following proviso: "* * * Provided further, That (a) none of the funds authorized herein shall be used to acquire public works already operated by public or private agencies, except where funds are allotted for substantial additions or improvements to such public works and with the consent of the owners thereof * * *." Act of July 15, 1943, 57 Stat. 565, as amended July 3, 1945, 59 Stat. 383, 42 U.S.C.A. § 1534.

The purpose of this proviso was thus stated by Senator Taft, upon whose motion it was written into the appropriation bill:

"Mr. President, the first clause of the Amendment provides 'that none of the funds authorized herein shall be used to acquire public works already operated by public or private agencies.'

"When the subcommittee of the Committee on Territorial and Insular Affairs were in Puerto Rico we found that the F. W. A. took 10 million of this rather limited fund intended for the construction of works in connection with the housing in industrial areas and used it to acquire all the power companies of Puerto Rico, the San Juan Power Company and the Mayaquez Power Company. So far as I can see there was no real justification for that. As a matter of fact the Federal Circuit Court in Boston subsequently held that there was an illegal application of those funds.

"I do not mean to say that it might not be desirable for the insular government, which owned a good many of the power facilities, the dams and the like, to take over the private power companies and consolidate them all into one system, but certainly there was nothing in the Lanham Act which authorized any such proceeding. It was intended to provide new facilities, it was not intended to provide for taking over old facilities. I think it is perfectly clear that no such power should be included in the Act." Cong.Rec. July 6, 1943, p. 7286.

On the following day Senator Taft consented to the modification of the proviso so as to permit the acquisition of an existing utility with the consent of the owner, saying:

"Mr. President, yesterday I offered an amendment which was agreed to. The Public Works Agency objects to the limitation which provides 'that none of the funds authorized herein shall be used to acquire public utilities already operated by public or private agencies.'

"When the amendment was offered, I referred to the Puerto Rican case. The Public Works Agency cites a case of a railway connection with a naval plant in one of the western states where they must have the railroad in order to complete the whole railway project

which the Navy desires. The railroad is worth, let us say, $1,000,000, and they are to put in $2,000,000 in order to complete the project. They have asked that in a case of that kind they be authorized to take over the existing work, where they are enlarging it. Even in such cases I do not think the authority should be given except with the consent of those who own the existing public works. Therefore I agree to an amendment so that the amendment would read: (Final form)." Cong. Rec. July 7, 1943, p. 7314.)

■ This shows beyond peradventure that it was the intention of Congress that public works should not be acquired under the Lanham Act without the consent of the owners; and the case was dismissed by the judge below on the ground that no such consent had been obtained. We think that this was correct, whether the ownership of the system be regarded as being in the Realty Corporation or in the lot owners who had paid for it and whose rights and easements constituted the only real value that it had. The lot owners could not be deprived of these rights and easements without just compensation; * and it is reasonable to interpret the consent required by the statute as applying to them as well as to the Realty Corporation which had built the system but whose interest therein no longer had any appreciable value. If, however, we look to the Realty Corporation alone, the consent necessary to acquisition by the government is not shown, since its consent was given upon a condition which the government is unwilling to accept. The government contends that this appears merely from the answer of the corporation and has not been established by evidence. The judge found it as a fact, however, after hearing the parties in a number of pre-trial conferences. Furthermore, the government has not pleaded compliance with the condition which it should have done, as it was expressly made a condition precedent to the right to acquire the property. See 18 Am.Jur. 961–962. Of course, if the owners of the property consented to its acquisition, there would be no necessity for condemnation or for the maintenance of this proceeding to condemn. The Realty Corporation does not consent except upon a condition that the government is unwilling to accept. So far as the lot owners are concerned, they not only have not consented but the government has not so much as asked that their interests be condemned.

■ We need not give consideration to this proviso, however, nor to failure to plead compliance with the conditions which it imposes. It is perfectly clear, as pointed out above, that the power of condemnation given by the Lanham Act extends only to lands or interests in lands; and, even though the condition be ignored, there is nothing in the act which authorizes the condemnation of a public works system such as this. So far as the situation here is concerned, the proviso merely emphasizes a lack of power to condemn which seems perfectly obvious without it.

For the reasons stated, we think that the condemnation suit was properly dismissed; and we cannot see that any undesirable results are likely to follow from the dismissal. The Belle Haven system is being utilized in the public works program as a result of the connection of the system with the system constructed by the government, and this will not be affected by the dismissal. All that remains are questions arising out of rights in the Belle Haven system, which can be adjudicated in proceedings properly brought for that purpose. We find nothing in the Lanham Act, however, which would justify the settlement of these questions here. Certainly there is nothing in that act which authorizes the government to take from abutting owners without compensation and without their consent their rights in an existing public works system.

The case before us comes to this. Owners of property in a suburban subdivision are served by a sewer system which was constructed for their use and was ultimately paid for by them. For the benefit of the government, and not for their benefit, this system has been connected with another system built by the government and the integrated system has been leased to Fairfax

---

* See opinion below 89 F.Supp. 571, and 18 Am.Jur. pp. 787–788.

County. In order that the county may assess the same charges against those entitled to the use of the Belle Haven system that it assesses against others who have no such rights, the government attempts to acquire the Belle Haven system by paying $3 to the company which constructed it and ignoring the rights of those who are as truly the real owners of that system as if it had been built by them as a cooperative enterprise. There is nothing in the Lanham Act which authorizes this to be done.

Affirmed.