UNITED STATES of America, Appellant,

v.

CERTAIN PARCELS OF LAND IN the COUNTY OF FAIRFAX, Commonwealth of VIRGINIA, and Belle Haven Realty Corporation, et al.; and W. Ralph Davis, Frank A. Leamy, et al., Appellees.

No. 7072.

United States Court of Appeals Fourth Circuit.

Argued Oct. 17, 1955.

Decided Dec. 12, 1955.

S. Billingsley Hill, Atty., Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Lester S. Parsons, Jr., U. S. Atty., Norfolk, Va., and Roger P. Marquis, Atty., Department of Justice, Washington, D. C., on brief), for appellant.

Frederick A. Ballard, Washington, D. C. (Joseph W. Wyatt, Washington, D. C., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is the second appeal to come before this court in connection with the condemnation of the Belle Haven sewer system. On the first appeal we held that the condemnation was not authorized by the Lanham Act, 4 Cir., 196 F.2d 657, but this was reversed by the Supreme Court and the case remanded to the District Court for further proceedings. United States v. Certain Parcels of Land in the County of Fairfax, Virginia, 345 U.S. 344, 73 S.Ct. 693, 97 L.Ed. 1061. Upon the remand the District Judge considered four questions: (1) whether the taking was for a public purpose; (2) whether the President had given his approval as required by the Act; (3) whether or not funds had been allotted as required by the Act as amended; and (4) whether the Belle Haven Realty Corporation had given its consent to the acquisition of the system by the United States. The District Judge answered all of these questions except the second in favor of the United States, but dismissed the proceeding on the ground that the President had not given the approval required by the Act, and the United States has appealed. The intervenors, who are lot owners in the Town of Belle Haven, contend that the dismissal should be sustained on the ground stated by the District Judge but urge as additional grounds for affirmance the points which he decided adversely to them as to public use and allotment of funds.

The history of this litigation and the facts upon which it is based are fully set forth in prior reported opinions and need not be repeated here. See D.C., 89 F. Supp. 567, D.C., 89 F.Supp. 571, D.C., 101 F.Supp. 172, 4 Cir., 196 F.2d 657, 345 U.S. 344, 73 S.Ct. 693, 97 L.Ed. 1061, and D.C., 121 F.Supp. 268. Briefly stated, the material facts are that in March 1942, General Fleming, the acting administrator of the Federal Works Agency, sought presidential approval for the construction of an extensive sewer system in Fairfax County, Virginia, as necessary to the health, safety and welfare of persons engaged in defense activities. This request was for presidential approval pursuant to the Act of October 14, 1940, Title II, Lanham Act, sec. 202, as added June 28, 1941, 55 Stat. 362, 42 U.S.C.A. § 1532, which is as follows:

"Whenever the President finds that in any area or locality an acute shortage of public works or equipment for public works necessary to the health, safety, or welfare of persons engaged in national-defense activities exists or impends which would impede national-defense activities, and that such public works or equipment cannot otherwise be provided when needed, or could not be provided without the imposition of an increased excessive tax burden or an unusual or excessive increase in the debt limit of the taxing or borrowing authority in which such shortage exists, the [Federal Works Administrator] is authorized, with the approval of the President in order to relieve such shortage—(a) To acquire, prior to the approval of title by the Attorney General if necessary * * * improved or unimproved lands or interests in lands by

purchase, donation, exchange, lease * * * or condemnation (including proceedings under sections 257, 258, 361–368 and 258a–258e of Title 40,) for such public works."

On March 11, 1942, the President approved the project, making necessary findings, in a letter to General Fleming, which is as follows:

"My dear General Fleming:

"Pursuant to Title II of the Act of October 14, 1940 (Public No. 849, 76th Congress), as amended, I hereby find that an acute shortage of public works or equipment for public works, as indicated opposite the name of the place listed below, necessary to the health, safety, or welfare of persons engaged in national defense activities, exists or impends, which would impede national defense activities, in the area or locality in and about the following place:

| Place | Public Works or Equipment Required | Total Estimated Cost |
|---|---|---|
| Various, in Fairfax County, Virginia | Sewer Facilities | $936,000 |

"I further find that such public works or equipment cannot otherwise be provided when needed, or could not be provided without the imposition of an increased excessive tax burden or an unusual or excessive increase in the debt limit of the taxing or borrowing authority in which such shortage exists.

"I hereby approve your taking action by any of the methods prescribed by said Act to relieve such shortage."

Accompanying the letter of General Fleming to the President was a certificate from the United States Public Health Service and a letter from the Surgeon General describing the project as the construction of trunk sewers, pumping stations and sewage treatment plant to serve the northeast section of Fairfax County at an estimated cost of $936,000. These were accompanied by a plat showing two trunk sewers, pumping station and treatment plant. Before work on the project was undertaken, it was decided that, instead of a sewage treatment plant with pumping station, a system with outfall into the Potomac River would be more advantageous. In constructing the latter, it was found that the trunk sewers of the Belle Haven System could be used as a part of the system being constructed, and that their use would involve considerable saving as well as eliminate useless duplication of sewer mains. In 1944, therefore, proceedings were instituted for the condemnation of the sewer mains of the Belle Haven Realty Corporation which were needed for this purpose and $2 was deposited as just compensation. The corporation having indicated that any taking should include its entire system and having agreed to accept nominal compensation therefor, the scope of the taking was enlarged to include the entire system and an additional $1 was deposited as just compensation. It appears that $732,073.31 has been spent on the project in addition to the original estimate of $936,000, but this has been largely because of increase in cost of labor and materials and has been covered by appropriations duly made by Congress. It is manifest that the increased cost has not been occasioned by the taking of the Belle Haven system for the nominal compensation of $3. The government has since conveyed the entire sewer system to Fairfax County, and the county has sought to impose service charges on residents of Belle Haven for sewer service.

We think that the District Judge was in error in holding that the President did not approve the project of which this was a part, as required by the Lanham Act. The President un-

questionably gave his approval to the construction of a sewer system to serve the defense workers housed in Fairfax County and to the acquisition of needed facilities for that purpose; and it is not reasonable to assume that it was the intention of the Congress that he should pass upon the details of such projects, or that the details of construction or acquisition should be frozen by his certificate of approval or that it would be necessary to run back to him for permission when any changes were made therein. Of course, approval of a project would not authorize the construction of something entirely different. Puerto Rico Ry. Light & Power Co. v. United States, 1 Cir., 131 F.2d 491; Wildermuth v. United States, 7 Cir., 195 F.2d 18. That is not, however, what we have here. The sewer system in main outline was built as planned to furnish sewerage for the housing of defense workers in Fairfax County. The acquisition of the Belle Haven system was but an incident in the carrying out of that plan. The acquisition of the mains of the Belle Haven system for a nominal consideration effected a considerable saving in the cost of the project and there was no reason why the laterals should not be taken over also, if in the opinion of those charged with responsibility in the premises this was necessary or desirable in connection with the acquisition of the mains, or was desirable otherwise from the standpoint of health or efficiency in furnishing sewerage for the housing of defense workers. Berman v. Parker, 348 U.S. 26, 36, 75 S.Ct. 98; United States ex rel. TVA v. Welch, 327 U.S. 546, 552–553, 66 S.Ct. 715, 90 L.Ed. 843. It is argued that the President did not give approval to the acquirement of the Belle Haven system; but there is nothing in the Act which can be construed as requiring approval by the President of incidental features of a project which he has approved as a whole in general outline.

Other grounds relied upon for sustaining the order of dismissal were rejected by the District Judge for reasons adequately stated in his opinion with which we are in accord. The order of dismissal will accordingly be reversed and the case will be remanded to the District Court for further proceedings not inconsistent herewith.

Reversed and Remanded.